Good morning, Your Honors, and may it please the Court, Sarah Weinman and Federal Defenders of San Diego, on behalf of Abrahan Garcia-Morales. This case should be reversed for two reasons. First, Mr. Garcia's Fifth Amendment rights were violated when the prosecutors at trial commented on his post-arrest silence. Second, his Fourth Amendment rights were violated when he was pulled over without reasonable suspicion. I'd like to focus first on the Fifth Amendment error, the Doyle error, but I'd be happy to answer any questions this Court has about the stop as well. In his post-arrest interrogation, Mr. Garcia waived his Miranda rights, and he answered some of the interrogating agent's questions. But there was one line of questioning that he consistently refused to answer. When Agent Call, the interrogating agent, asked Mr. Garcia to name names of who else was involved in the smuggling organization, Mr. Garcia shook his head, said no, that he wasn't cool providing names on camera. Agent Call pressed on, said, can you give me any name, a nickname, a given name, a Christian name? And Mr. Garcia consistently was silent as to that line of questioning. Now, at trial, the prosecution in its case in chief called Agent Call to the stand, and they elicited testimony from Agent Call about Mr. Garcia's silence on this matter. The prosecutor asked if, the prosecutor asked, did, as the interview continued, this is at ER 647, did you ask Mr. Garcia or inquire about who had approached him to do the smuggling? Counsel, how far into the testimony was that question asked? This was on, I believe this was the second day of trial. And how far into his, was he the first witness? He was not. So how far into his testimony was this question asked? I would say it's about halfway through, and it went on. So he, the prosecutor asked initially about the reading of the Miranda rights, some of the initial questions asked, and then the prosecutor said, as the interview continued, did you ask him or inquire about who had approached him? Yes. And did he give you a name at that point? No. Throughout the entire interview, did he ever give you a name of any individual who had hired him to transport aliens? No, sir. And then he went on. Was there an objection? There was no objection, Your Honor, and this is on review for plain error. So the prosecutor then continued, did you ask for even a partial name? Yes, I asked for a nickname, a given name, whatever he could provide us, and he seemed very uncomfortable with the fact that his statement was being recorded and kind of referred that he might be willing to say something after the interview. Did he say something after the interview? No. As far as naming someone, no. And then the prosecutor played clips from the post-arrest interrogation, so the jury was able to see for themselves that when Agent Call pressed with this line of questioning, Mr. Garcia shook his head and said he would not name names. He remained silent. Then in closing argument, the prosecutor explained to the jury that Mr. Garcia had been evasive and in his post-arrest statement that he had been evasive, alluding to this fact that Mr. Garcia had refused to name names. And in its rebuttal closing argument, right before the prosecutor sat down, he told the jury that they should assume guilt based on this silence. He said they should assume guilt? That was the inference. Okay. He didn't say they should assume guilt. He inferred they should. Yes, and I apologize if I misspoke. What he said was, why does Mr. Garcia want the recording turned off? Well, was it because he was going to provide fantastic information if they just turned the thing off? Well, you heard the testimony. Agent Call said, if you want to, we will turn it off and you can tell me. In fact, he had an opportunity later. Why wasn't that a remark about credibility as opposed to guilt? It was a remark on the silence that Mr. Garcia elected to use in his post-arrest statement. So Mr. Garcia's theory of defense was that he had intended to pick up the aliens and turn them over to Border Patrol, and that was based on testimony that the jury had heard from one of the other agents here. Why wasn't that impeachment of that expressed intention? For a couple of reasons, Your Honor. First of all, the impeachment exception to Doyle exists where the defendant has taken the stand as a witness and where they make an affirmative statement that they said something in their post-arrest interrogation. I told the agents the names of everyone who I had worked with. In that particular case, a prosecutor could get up and cross-examine the defendant and impeach that prior inconsistent statement by saying, well, actually, you didn't name names. You didn't say anything, did you? That would be proper. That would not be a violation of Doyle. But that's not what happened here. Mr. Garcia never put on a defense. He never took the stand. The prosecutor elicited affirmative testimony in their case in chief on direct evidence about Mr. Garcia's silence. Now, that silence was completely consistent with Mr. Garcia's theory of defense, and the prosecutor's comments on that silence violated Doyle. It wasn't an impeachment of the theory. How was his silence consistent with his theory of defense? His theory of defense was that he intended to pick up the aliens and turn them over, and that was the type of information that Agent Nevarez had told Mr. Garcia he could be paid as a paid informant to provide. He said Mr. Garcia would need to provide actionable information, such as picking up a load of aliens and turning them over to Border Patrol. So the theory of defense was that that is exactly what Mr. Garcia was going to do. So whether or not he named names had nothing to do with that intent. It might have hurt his marketability. Yes, that's true, Your Honor. But, again, it wasn't the type of impeachment that Doyle envisions. Is it your position that there was an unequivocal statement by the defendant that he wanted to remain silent about this one particular subject? Well, yes, Your Honor. He did steadfastly refuse to — Do we have any cases where unequivocal claims of Fifth Amendment rights, not to be questioned about a particular subject, can be done by silence? Yes, Your Honor, and I have two points to make here because I think there's some confusion in the briefing as to this point. With regards to whether an invocation needs to be clear and unambiguous, that's the rule for when there's a Miranda violation, where a person is claiming that the interrogation should have ceased. In that situation, we look at was the invocation clear and unambiguous? But that's not the type of violation we're arguing here. The invocation here doesn't have to be anything more than that he refused to speak, and that's because Doyle says that silence will carry no penalty. And, in fact, this court has repeatedly held that even pre-Miranda silence is protected by Doyle. So the invocation— Can the silence be on a particular topic as opposed to total silence? Yes, Your Honor. And that comes from, I believe it's Velarde Gomez, which explains that silence is the fact of abstaining from speech altogether or even on one particular subject. You said a while back that there was no objection to this line of questioning, so we have to—what's the standard of review here? Is it clear error, plain error, or must the government prove that this alleged constitutional error would not have changed the verdict of guilty beyond a reasonable doubt? The standard of review is plain error, and this case meets all four prongs of that analysis. The error is plain under Doyle itself, and that much is clear from the very text of Doyle as well as this court's Doyle cases, including Velarde Gomez and Caruto. With regard to the third prong, prejudice, this court looks at three factors, the extent of the comments made by the witness, whether an inference of guilt was stressed to the jury, and the extent of other evidence suggesting guilt. All three of those factors point to the fact that the error here did affect Mr. Garcia's substantial rights. The extent of comments made by the witness were extensive— and the fourth prong is also met, and in fact one of the cases cited by the— How is the fourth prong met in this case? Well, silence is sacrosanct, and that's embedded in the Fifth Amendment, and Doyle protects that silence. Doyle is a bulwark against any argument that a person's election to not incriminate himself can be used to infer guilt. The case that the government cited was a plain error case in which they held that all four prongs of the plain error— The fourth prong is the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. That's right, Your Honor. And usually we look at that to see whether or not the other evidence of guilt was so strong that this error would not have affected the outcome. I see I'm out of time, but I would like to respond to Your Honor. The government has pointed—excuse me. In its response brief at pages 35 and 36, the government points to six factors to allege evidence of guilt. All of those factors are consistent with Mr. Garcia's theory of defense. The government points to the fact that there were aliens, undocumented aliens apprehended earlier that day, that he was driving the same color and type of vehicle that the smuggling organization said he would be, that he had been in contact with the smugglers, that he admitted to picking up an illegal entrant in a nearby spot a couple days earlier or trying to, and that he had deleted information on his phone. Was this theory of defense presented to the jury? It was, Your Honor. All right. Thank you, counsel. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, the prosecution in this case did not commit plain prosecutorial misconduct by introducing certain statements from the defendant's post-arrest statement. Once a defendant waives his right to Miranda and begins speaking with agents, he, of course, has the right to stop questioning at any time and invoke his right to silence. But to do so, the Supreme Court has made it clear that the defendant has to invoke in an unambiguous and unequivocal way. What's unambiguous about keeping your mouth shut on a subject? Every time the question is asked him, who's paying you, he shakes his head and says, won't talk. The first time the agents asked him to name names with people within the organization, he responded by saying, I ain't feeling cool with that on camera. He then immediately responded to the suggestion from the agent that he would feel cool talking with them after the camera was turned off, and, in fact, he did respond to questions again at the conclusion. But on another subject, after the camera was turned off. Did he ever say anything about who was paying him? He did not, no, because once the agent testified that once he turned off the camera at the end of the interview, he then asked the defendant, okay, now are you ready to name names? The defendant at that point tried to negotiate with him and say, you know, I'll give you information if you reduce my jail sentence. That sort of negotiation, I'll give you information if you give me benefits, that's not an unequivocal invocation of the right to silence. That's a bargaining with the agent. It's a conditional. It's a change in the conditions of negotiation. Yes, Your Honor, and there's no case of that. The question I have is this. Did he ever indicate that he wanted to talk about who was paying him? No, when they asked him about. He was quiet as a tomb about that, wasn't he? To the extent that he attempted to negotiate with the agents before giving the information. And the agents wouldn't negotiate. They wouldn't give him what he wanted, so he kept quiet. But whether he did one tactic or another tactic, one thing is clear. He wanted to be silent about who was paying him. True? Your Honor, I would disagree. I think that that is saying that I'm willing to negotiate, I'm willing to give you information if you give me something in response, is not an unequivocal invocation of the right to remain silent. It's a negotiating tactic. Unequivocals say I won't talk unless you give me something. But it still says I won't talk. I understood, Your Honor. At the very least, I would say there's no case law that would suggest that that sort of bargaining position like that would constitute a clear invocation of the right to remain silent, and we're on plain error review. So without any case law on this subject, the court did not err by sort of not sua sponte recognizing that as a violation of the Fifth Amendment. And even if this court were to conclude that his statements about not wanting to speak on camera and his later refusal to provide information absent benefits in return did constitute an unequivocal right to remain silent, this court has held that once a defendant at trial puts on evidence or creates the impression that he did cooperate with agents, then even invocation of silence or even a defendant's silence post-arrest can be used to sort of correct that false impression that the defendant created. Counsel, what's your strongest case to support that argument? That would be McMillan v. Gomez. In that case, the court actually held that it was the defense cross-examination of the interviewing agent that created the impression that sort of opened the door for the prosecution then to later question the defendant about his refusal to cooperate with agents. In other words, they cross-examined the agent, created the impression that the guy was cooperating all along, and this court held that it was okay at that point for the United States to respond and say he didn't cooperate at all when interviewed the second time. In that case, did the defendant testify? He did. But that was the point that opposing counsel was making, that those cases generally involve a testifying defendant. In this case, he didn't testify. So why should we be persuaded by the analogy to that case? Your Honor, he did testify in that case, but the court made it clear that the thing that created the impression that opened the door was the defense cross-examination of the agent before the defendant even took the stand. They created the impression that he had been fully cooperative. Then when the defendant took the stand, the court allowed the prosecutor to then sort of delve into what he didn't say when he was interviewed the second time. Would you agree that it's a little different when the evidence is coming in through the government witness and the defendant has not testified? It is different, Your Honor. I don't think that there is a case, again, that's directly on point with this fact pattern. But if you look at how the sort of defense came in sort of chronologically in this case, the agents, the interviewing agent, excuse me, one of the agents testified and was cross-examined. The defense asked multiple questions about the defense cooperation with Border Patrol. Then eventually the parties went sidebar to talk about whether the defense would be pursuing a public authority defense. And at that sidebar discussion, the defense sort of laid out what their theory of defense was going to be and what they were going to argue to the jury, which was that this defendant never had the specific intent to transport the aliens because all along he was cooperating with the Border Patrol or he was intending to cooperate. Once that impression was clear and that defense was clear, that's when the United States put on this evidence and played these clips to show that even after the defendant was arrested, he never cooperated with the Border Patrol and refused to cooperate. But the comment wasn't that he wasn't cooperating. The comment inferred that he was guilty because of his silence. I would disagree with that, Your Honor. I think both the closing argument and the rebuttal were directly tied to this idea that the defendant's defense, that he was cooperating this entire time or intending to cooperate, was undercut by the fact that he didn't cooperate when he had the opportunity to on camera. Counsel, could you address the four prongs of our plain error review standard? Sure. I think I've just discussed the first one and the second one, that there wasn't an error. At the very least, there's no controlling case law on this specific fact pattern that would have been plain to the court. As to the third prong, it's our position that even if this was an error, the defense has not met their burden of showing that this affected his substantial rights. The evidence of the defendant's involvement in the attempted alien smuggling was overwhelming in this case. Agents found three undocumented aliens in a high traffic area at approximately 2 o'clock in the afternoon. One of them was talking on a phone and scanning as if he was looking for a load vehicle. And then approximately 30 minutes later, the defendant arrived in the same make and color of car that the alien had received a call on, saying there's going to be a red Jeep coming to pick you up. The defendant arrives in a red Jeep approximately 30 minutes later. In addition, the agents also showed that the defendant's phone had called the same contact in Mexico that the aliens had. And then the defendant agreed to be interviewed and admitted that he was going to be paid $200, that he was planning to take these aliens to some other location, and that he was going to give some of that money back to his passenger. And in addition to that substantive evidence of the defendant's guilt, even the defendant's defense that he was cooperating with Border Patrol all along was directly undercut by a number of other facts and evidence besides the statement on the video. First, there was the fact that when he left the location and a Border Patrol agent followed him for six miles, he did not say anything to that agent about wanting to cooperate. And in fact, when the agent approached his vehicle, he lied and said that he was actually visiting his cousin at the prison. He also, as I mentioned, when he agreed to be interviewed, he told the agents that he was going to be paid $200 per alien, that he was going to drive them somewhere within the United States, and that he was going to give a portion of that $200 to his passenger. And it doesn't make any sense why, if his whole plan all along was to not pick up the aliens at all and call the Border Patrol, why he would be discussing getting $200 and giving some of that to his passenger if the whole time he was not intending to get any money at all other than potentially from the Border Patrol agents. And then finally, as the defendant is leaving the scene, the evidence showed that he deleted all of the contacts in his phone. And so there was no contacts on his phone until the point he was arrested when the sort of incoming calls from the smuggler arrived. So all of those facts directly undercut this idea that the defendant was only in this area, not to pick up aliens, not for $200 a head, but merely to scope out the area and then call the Border Patrol. The additional evidence of his refusal to cooperate would not have made a difference in this case, and the defendant has therefore failed to meet the third prong of plain air review. All right. Thank you, counsel. Thank you. One minute for rebuttal. Thank you, Your Honor. I appreciate it. Just a couple of quick points. Opposing counsel said that McMillan is on point because, in that case, defense cross-examined a government agent and elicited evidence of cooperation. That case just isn't relevant here. What happened here was the prosecutor on direct examination asked their own witness about what Mr. Garcia had explained, and Mr. Garcia and the agent said Mr. Garcia said he planned to pick up the aliens and turn them over. That information about cooperating, that came from the government, and the defense's theory of defense followed suit from that. Moreover, this theory of defense that he was planning on cooperating by turning over the aliens is totally consistent with the fact that Mr. Garcia was uncomfortable naming names, that the fact that he ---- In response to opposing counsel's position that he merely wanted to negotiate the terms under which he named names. That he never did. He said ---- Never did what? He remained silent. He didn't negotiate. But what he didn't negotiate in counsel's view because the agent would not negotiate. Either way, silence is silence, and what Doyle said is that silence can't be used as an admission of guilt, and that's what the prosecutor did here. That's what they did in their rebuttal argument. They said that he couldn't have intended to cooperate by turning over the aliens because he was silent about names. He was silent during the interrogation, and he was silent after the interrogation. He never named names. That was improper. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Settle